LAMBRECHT does not disclose the following claim limitation. Do you agree claim 1 of the 789 patent is illustrative? Yes. Does the 789 patent define arbiter and decoder? And if so, where? I'm asking because on page 8 of the blue brief you say the memory interface includes an arbiter for selectively providing access for the first devices and the decoder to the memory. Right, the reason why you have a decoder. No, no, my question was does it define them? I don't know if there's an explicit definition, but I think the purposes of the decoder as well as an arbiter are described in the patent. The purpose of a decoder is you have compressed data. Whenever you have a movie, there's so much data that it has to be compressed before you put it on a medium or before you transmit it. The decoder, as you're watching the movie, for example, will take that compressed form and decompress it so it can be displayed in real time. Don't waste your time with attorney argument on it. If it's not there, it's not there. You say on page 18 of the blue brief that the PTAB improperly shifted the burden to you by, quote, in its corresponding description suggesting that when PCI bus 120 is placed in multimedia mode, multimedia device 144D is precluded from accessing main memory 110 and operating in real time. How is that burden shifting? Sure. It's impossible to understand these things unless you look at the picture. There's a very good picture on page 25 of the blue brief. It's an annotated. It's a figure 21 from Lambrecht that was annotated by the petitioner to make it easier to understand what their anticipation assertion is. So if you look at item 144D and it's in green and it's identified as the decoder, that's what they allege is the decoder. The memory that is shared is in red and that's item 110. In order for data to be transferred in real time, so the particular limitation from claim one that we're discussing is a decoder that requires access to the shared memory sufficient to maintain real time operation. In order for that decoder to meet this claim limitation, each component along that path from the decoder at 144D to the memory at 110 needs to be able to operate in real time, has to be capable of operating in real time. So what is along that path? You see the PCI bridge subset, item 106. You also see another bus, item number 108, which is between 106 and 110. So in order to justify a finding of anticipation, what was required by the board was to answer specific questions on each of these components. And the specific question that they should have asked and then answered is, does the PCI bridge subset 106, which is along the path from the decoder to the shared memory, does it operate in real time and access the PCI bus when it is in real time mode? That was a very important question. It's something we emphasized in our patent owner response. We emphasized that I spent several minutes on that issue at the hearing. Another very important issue, which is necessary for a finding of anticipation, the memory bus 108. The question they should have asked is, does the memory bus along the path from the decoder to the shared memory operate in real time and access the PCI bus when it is in real time mode? There's no dispute that each of these components along the path has to operate in real time mode in order to meet this claim limitation. Think if you're driving a fast car on the track and you're trying to go 150 miles an hour. Each segment along the track has to be capable of maintaining that speed. If you had a segment where they were doing some reconstruction and there was dirt with potholes, then it wouldn't be capable of sustaining that speed. You'd go into a pothole, your struts would break, you'd probably kill yourself and wreck the car. It's similar here. It's analogous to the principle. Not the way I drive. It's analogous to the principle that each component along this path between the decoder and the main memory has to operate in real time mode. What the board should have done was to ask that question for each of these components. The board did not do that. Instead, this is what the board puts in its final written decision. I'm quoting, there is nothing... Counsel, you're saying that, I think you're saying that failure to answer these questions equates burden shifting. That's part one. Part two I'm going to read to you. It says there is nothing... What page are you reading from, please? I'm reading from the final written decision. 21. Thank you. And I'll read it to you. Here's what the board says. There is nothing in reference to figure 21 and its corresponding description suggesting that when PCI bus 120 is placed in multimedia mode, multimedia device 144D is precluded from accessing main memory 110 and operating in real time. That is improper burden shifting. You know, we get these arguments from the petitioners all the time when they're rejecting your positive arguments as insufficient and say that's burden shifting. That sentence follows positive statements from the petitioner's declarant that says exactly the opposite. How is that burden shifting when all the board is doing is saying we believe them, not you? Because they didn't approach this issue with enough specificity in order to... Well, that's for us to decide. That's not burden shifting. We can look at their conclusion that considering the disclosures in the land draft, and I'm reading from the sentences right before what you cited to us. Dr. Stone testifies that one of ordinary skill and an art would have understood and goes on to get to the exact conclusion you think the board didn't make. You may disagree with that, but it's not burden shifting. It's disagreement with the petitioner's expert. Well, Your Honor, I respectfully disagree for the following reasons. It's undisputed that each of these components between what's alleged to be the decoder... Let me ask you a question. If the board makes a finding of fact after weighing evidence, do you believe that that always shifts the burden to the other side? No, I would not say that. That seems to be what you're arguing. Well, I was focusing on the statements that's in the final written decision. But my argument isn't that the board's findings are not supported by substantial evidence. Then you lose. My argument is more specific than that. My argument is that the board did not make the findings that were necessary in order to determine whether this claim limitation was met by this particular reference land brick. But it said it did. No, there's no specificity there. It never said that the PCI bridge subset is capable of sustaining real-time operation. It never said the memory bus 108... It did go through piece by piece, but it said, in view of land brick, we think this discloses everything. And it is capable of doing it in real time. Isn't that what those sentences in 21 that I just cited to you say? I mean, maybe you would have preferred them just... That glosses over the important issues. Well, this is a substantial evidence case. And if the board makes the conclusion that this discloses everything and explains it in a reasonable manner, and it's supported by substantial evidence, which you seem to concede... I may have misspoke. I don't concede that it's supported by substantial evidence. You just did. Well, I may have misspoke, saying that it's not supported by substantial evidence because they did not dig deep enough to make the proper inquiries to determine whether or not each of these components is capable of sustaining... Just so you're aware you're into your rebuttal time, but keep going. It's up to you. Well, I have some other arguments with respect to another connotation where there's a bus having a sufficient bandwidth to enable the decoder to access the memory and operate in real time when the first device simultaneously accesses the bus. In this case, the board did not rely solely on figure 21. Rather, it relied on both figures 6 and 21. It improperly picked and chose from different unrelated embodiments of figures 6 and 21 in order to establish that Lambrecht disclosed this particular limitation. Can you tell me what's wrong with this understanding of what I took to be going on, which is that the board looks at figure 21, some of the language, particularly in column 27 of figure 21, and reads Dr. Stone and concludes, you know, this looks like Lambrecht is teaching a use of, even in multimedia mode, of the main memory. And then you say, you come back and say, well, one reason that can't be so is that there's something missing. Is it the mode logic or something? Interface logic. The interface logic. If you look at the figure, the interface logic is on the decoder. Right. And I thought it was in that context. And the interface logic is not claimed element. It's just something that you say is, as a practical matter, necessary to get the shared access to the main memory at multimedia mode speeds. And the board says, Dr. Stone says no. And what's more, responding to your practical argument about a missing unclaimed component, says figure six kind of tells us you don't need what you say is needed. So it's not combining elements from figure six to figure 21, but using figure six as evidence that your counterargument to their reading of column 27 is wrong. I understand what you're saying. Our argument is that Lambrec indicates that you need this interface logic in the decoder in order to access the bus when it's operating in real time. That's what's in there. And that's missing from the PCI bridge subset, for example. And then they go to figure six and they say, well, in figure six, it's not there. But figure six is a very different embodiment. Figure six has two hardwired buses. It doesn't have a bus that can operate either in multimedia mode or real time. So that's why it's not that interface logic is not required in figure six, but it is absolutely required in figure 21. So they should not have been referring to figure six because figure six has two hardwired buses. So that shows nothing. The interface logic is absolutely required when you have a bus that has two different modes. One real time and one not real time. You want to reserve the rest of your time? Sure. The only thing I'll take five seconds. Take whatever you want, but I'm not restoring any. I understand. The board made a decision on the claim construction of real time, and then it didn't use that claim construction decision. It used a limit that was in another reference to say what is real time and what is not. And we feel that was improper because the board didn't use the claim construction that was proper in its anticipation analysis. Thank you, counsel. Ready to proceed? Go ahead. May it please the court. Contrary to appellant's attempts to characterize what this case is about, the issues before the court are purely factual. The board made factual findings and they're supported by substantial evidence. I'll begin by drawing the court's attention to appendix 29 and near the bottom. In response to the suggestion that the board did not address each issue specifically enough, at the bottom of 29, the board says that figure 21, its corresponding description in Lambert, together with the knowledge of one ordinary skill in the art, we agree with petitioners that the PCI bus 120 is placed in multimedia mode. It supports data transfers at a rate sufficient to enable all components coupled thereto, specifically calling out PCI bit bridge chipset 106, interfaces with the main memory, and the memory bus 108 to operate in real time. The suggestion that the board didn't address the issue specifically enough or make factual findings on that is not correct. They made all the factual findings that they were supposed to and just happened to find against the appellant in this case. There's substantial evidence to support that in the testimony of Dr. Stone and Lambert itself. A mere disagreement with how this specification is read, according to Henry Gard's side, is not sufficient to say that there isn't substantial evidence. Disagreement alone isn't enough. The Supreme Court has said that as well. So the board made factual findings. At the end of the day, the appellant made his arguments to the board. They disagreed with them. A lot of them had to do with – Can you focus not so much on that high level of generality but the very specific point about – and I'm going to use the shorthand and hope that you will unpack it fairly – the missing interface circuit in order to make this work? The missing interface circuit. Isn't that what it was called, what your colleague there called as part of his criticism of the invocation of Figure 6? Correct. So the argument there stems from the fact that Dr. Stone testified, as you pointed out, that Lambert 21 and the Figure 21 discloses all the claim elements and that one of skill in the art would understand that the chipset 106 would interface with the PCI bus 120 when in multimedia mode. The response that came back from the patent owner was that Figure 1 somehow limited the understanding or the operability of what's going on in Figure 21. And the response from Dr. Stone was that's not correct. You can't take what's happening in Figure 1, which had two separate buses, and – Right, just so that – let me try to identify my confused state of thinking, maybe confused. I took it one of their arguments was Figure 21 is nothing but smushing together the two things that are in Figure 1 and each mode does only the thing that in Figure 1 is in two separate buses. And there's a perfectly decent argument for saying you're over-reading the characterization of Figure 21 where the spec says this is similar to Figure 1. There's more than just putting together two things with each mode perfectly mirroring the two buses. Then I took it they had a separate argument. A separate argument that says even if you might otherwise read Column 27 and whatnot to describe Figure 21 as showing multimedia mode that gets back to the main memory, there's a reason you can't do that. And that's because there's some technical piece that would be required in order for that to work. And that technical piece is not shown. I think the interface circuit are the words I'm remembering, but I may be misremembering the words. Can you focus on that second piece? Right, that second piece also stems from the earlier argument about it. And Dr. Stone disagreed. He said that one of skill in the art would read that to understand that all the circuitry necessary in order for it to operate are there. And if you take a look at Appendix 1745, it actually defines Chipset 106, which is what we're talking about, the Chipset 106 interfaces with the bus and the memory bus. And it says it is a Triton chip from Intel or like one that accommodates real-time communication. So the specification in the Lambert Disclosure itself says that it is capable of the real-time interface. Dr. Stone said it is. Their argument, again, goes back to Figure 1 and the limiting that's going on and their interpretation of what's happening with respect to the 106 disclosed in that figure and how it operates with the bus 130 and the bus 120 and what's happening there. The board discredited Dr. Thornton's testimony on that regard and credited Dr. Stone's testimony in that regard to say to one of skill in the art, they would understand that that is, in fact, in and disclosed in Lambert, Figure 21. So the board, as Judge Toronto, you pointed out, the board made specific findings with regard to Figure 21 and the fact that Dr. Stone said that all amounts are there and then added an additional element, which is that Figure 6 supported his understanding of what was already disclosed in Figure 21. So it is not a putting in elements that were missing or supplying something that wasn't there. Everything is disclosed in Figure 21. The board instituted on Figure 21 and had a decision on Figure 21. With respect, Judge Wallach, to your question about whether the 789 defines decoder and arbiter, you'll find at Appendix 55 there's a discussion of the decoder, same with Appendix 53. I don't believe that there's a specific definition of arbiter, but there is a discussion of arbiter at Appendix 57 as well. With regard to real-time- And that's just so I understand. I mean, arbiter is just a device that says various people want access to me and I have to decide who goes first. Exactly. With respect to the real-time claim construction, there is no different claim construction. It's the same claim construction. What the board did is he put in the context of the claim limitation itself, which is the decoder must operate in real-time, but the bandwidth on the shared bus must be sufficient for it to do so. And to determine whether or not it's efficient, the board looked to the disclosure to determine what that bandwidth would be required in order to get to real-time communication or real-time operation of the decoder. Unless there are any further questions.  We ask that you work to affirm. Thank you, counsel. You have 28 seconds, counsel. I'll be very brief. Figure 21, it shows the decoder. It shows that the interface logic is there. So it's needed to access the bus when it's operating in real-time mode. It's not present in the PCI chipset. And that is a component along the path which must operate in real-time in order for the decoder to access the memory in real-time. Thank you.